## THE PETER WHITE.

(District Court, W. D. New York.  December 5, 1906.)

SALVAGE—AMOUNT OF COMPENSATION—RESCUE OF DISABLED STEAMER IN LAKE SUPERIOR.

On October 31, 1905, the steel steamer Peter White, 524 feet long and valued at $330,000, bound for Duluth, was disabled in Lake Superior 60 or 70 miles east of that port by the breaking of her crank shaft. The water was rough, and the wind was blowing 20 miles an hour and afterward increased. She lost her port anchor and was drifting at the rate of

4 miles an hour toward Outer Island, 30 miles distant. After six hours the steamer Troy bound from Duluth sighted the distress signal of the White and went to her relief, towing her to Duluth at a loss of 16 hours from her voyage. The Troy was also a large steamer, valued at $325,000, with a cargo of $250,000. There was some risk in making fast the hawser which necessitated going quite close to the White. During the six hours preceding the coming of the Troy, which was at noon, no other vessel had passed. *Held* that, considering all the facts and the considerable peril of the White, the Troy was entitled to a salvage award of $5,000, one-fourth to her officers and crew.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Salvage, §§ 70, 71; Salvage awards in federal court, see The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage.

Brown, Ely & Richards, for libelant.

Hoyt, Dustin & Kelley, and G. W. Cottrell, for respondent.

HAZEL, District Judge. This proceeding is in rem to recover salvage for services rendered by the steamboat Troy in taking in tow and conveying to the port of Duluth the freight vessel Peter White, which was found disabled on Lake Superior on October 31, 1905. The Peter White is a large steel vessel 524 feet long, 54 feet beam, 30 feet in depth, gross tonnage 9,000, and valued at $330,000. The Troy is 398 feet long, 47 feet beam, 28 feet in depth, valued at $325,000. The latter was bound from the port of Duluth to Buffalo at the time of performing the salvage service, and carried a cargo of the value of $250,-000. At about 6 o'clock on the morning of the day mentioned, when about 60 or 70 miles from Duluth, her port of destination, and about 8 miles from Sand Island westward, the Peter White broke her crank shaft. The wind was then blowing about 20 miles an hour. At noon of the same day, the Troy observed the signal of distress which the Peter White had hoisted, immediately left her course, and rescued the disabled steamer. On account of the rough sea the Troy towed her to Duluth, instead of Two Harbors, the nearest port, and was thereby delayed in her down trip about 16 hours.

The services rendered were clearly of the character of salvage. The single question for determination is the amount of compensation which should be awarded. The material facts are not in serious dispute. In arriving at the amount hereinafter decreed to be paid by the salved steamer, I have not considered her value with a view of making an award on a percentage basis; my intention being simply to adequately compensate the Troy, her officers, and crew for their generous and valuable services. I have weighed and considered the different views of the situation, the value of the steamer salved, her peril, the state of the wind and weather, the drifting of the vessel at the rate of about 4 miles an hour toward Outer Island (30 miles distant), and any probabilities of her going on the rocks or into shoal water; also the temporary repairs that were being made to enable her to proceed under steerageway to Duluth, and the claim that the steamer Presque Isle was scheduled to pass down and the possibility of the disabled steamer being observed and assisted by her. Furthermore, I have considered that the Peter White hoisted a flag of distress after her crank shaft broke, which evidently was indicative of apprehension and immi-

nent danger. She was in the trough of a rough sea and had lost her port anchor in trying to arrest drifting toward the group of Apostle Islands. The wind which was blowing fresh with increased velocity created a perilous situation and without doubt some anxiety on the part of her master, although he testified that he did not consider there was much danger. As already observed, the steamer Troy, carrying a valuable cargo, went outside her course to render assistance. The risk assumed by her, together with the skill and promptitude displayed in getting alongside and taking the hawser of the distressed steamer, her willingness to be helpful, irrespective of the danger or pecuniary loss from delay, are all elements to be considered upon the question of salvage remuneration, and I think entitle her to a fairly liberal award. But the respondent contends that in the cases of The Spokane (D. C.) 67 Fed. 254, and The Peerless, Fed. Cas. No. 4,494, the facts and circumstances are closely analogous to the conditions under consideration, and therefore the salvage award in this case should not be appreciably larger than in those cases. In Re The Spokane the property saved was nearly of the value of the Peter White, and the award, including expenses, was $3,600. In that case the court held that though disabled the steamer was in no imminent danger, there being no sea and good shore, and a small boat could have been sent ashore to telegraph for assistance. In The Peerless, supra, an air pump broke and the ship was rendered helpless. The water was not troublesome, nor was there any apprehension from drifting on rocks or into shallow water. Moreover, the value of the property saved and the value of the salvor was much less than in the case under consideration.

· A distinction was drawn at the hearing by counsel for respondent between the conditions of navigation on the Great Lakes and those which prevail on the ocean, and though assenting to the proposition that perils may be encountered on the ocean more serious than those met on the Great Lakes, yet it is well known that, when the waters of the Great Lakes are tempestuous, the risks and dangers manifestly are not dissimilar to those which in a like situation confront the salt-water mariner. Therefore the rule is just that the circumstances of each case must be determinative of the amount of salvage compensation earned. The R. R. Rhodes, 82 Fed. 751, 27 C. C. A. 258; The J. Emory Owen (D. C.) 128 Fed. 996.

The libelant contends that the salvage services were of such a high order as to warrant a compensation on the basis of the value of the vessel, and that 10 per centum of such value would not be unreasonable. To this extreme view I do not assent. The services rendered necessitated going close to the disabled steamer to take her hawser, which was a hazardous undertaking, as the proofs show. Being light, she rolled or pounded considerably in the sea. Under the circumstances the act of thus venturing the safety of the Troy was meritorious and praiseworthy. Although the situation of the Peter White in view of the wind and her drifting towards Outer Island was grave and perilous, yet it is claimed that her danger was greatly minimized by the expectation that the temporary repairs to her shaft would be completed by about 3 o'clock in the afternoon, and that the Presque Isle or

some other passing boat might have perceived and succored her. These suppositions, however, do not warrant simply a moderate compensation, and such as the respondent has suggested a willingness to pay. Any surmises regarding relief from danger based upon the uncertain happenings indicated are bereft of controlling or effective force when one considers that the captain of the Peter White knew that the Presque Isle would pass in the pathway of steamers at about 3 o'clock that day, and also was aware of the estimated time it would take to complete the temporary repairs, and yet sought and accepted the services of the Troy.

The proofs show that the wind slightly increased in velocity, accompanied by snow flurries, after the towing by the Troy began, and it is not improbable, as argued, that the view of passing vessels might have become obscured or blurred and the signals of distress not heard or discerned. The claim that the Peter White was in imminent danger of drifting on Outer Island or Brownstone Reef or into shallow water, at first blush, may be regarded as somewhat remote, yet the facts that her drifting without a port anchor was at the rate of 4 miles an hour, that the wind meanwhile having veered to the northwest was blowing about 30 miles an hour, and that the Troy was the first vessel that appeared within six hours after the disaster, indicate a situation fraught with menacing danger. In this connection it is to be noted that, when the shaft of the Peter White broke, another steamer, the I. W. Nicholas, bound in the same direction was about half a mile ahead on her port bow. Four blasts of the whistle were blown, indicating distress and a desire to be taken in tow, but the signals were wholly disregarded, and the I. W. Nicholas uninterruptedly pursued her way. Whether such signals were actually heard does not positively appear, but that they were heard may be fairly presumed. It is important that the amount of compensation awarded in such a case as this should be sufficiently liberal to prove that the courts are not unmindful of the value of such services and to create and promote an incentive to vessels, their skippers, and crew to promptly and courageously assume risks and encounter dangers in the performance of saving life and property in distress on the Great Lakes. Therefore, even though no lives were hazarded, a salvage compensation to the Troy of $5,000 will not in my judgment be an excessive award.

The decree should provide that four-fifths of the amount be disbursed to the owners, and, as the lives of the master and crew were not greatly exposed, the remaining one-fifth only is awarded to them. From the latter sum $350 is awarded to the captain, $125 to the mate and a like sum to the engineer in charge, leaving $400 to be divided among the other officers and members of the crew in proportion to their wages.

Decree accordingly, with costs.